**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Premco Western Inc., | No. 05-2211-PCT-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Dirk Kempthorne, Secretary of the Interior, | |
| Defendant. | |

Pending before the Court is Plaintiff Premco Western, Inc.'s Motion for Summary Judgment (Doc. # 29). Also pending is Defendant Dirk Kempthorne's Cross-Motion for Summary Judgement (Doc. # 39).[1]

**I.   Background**

This is an administrative review involving the termination of a unit agreement. A unit agreement is a contract between the United States and other parties for joint development and operation of an oil and gas field where substantial amounts of public lands are involved. *Chesapeake Operating, Inc., et al.*, 149 IBLA 188, 202 (1999). The unit agreement at issue herein is identified as the Dutchman Unit, No. AZ1X, Mohave County, Arizona (the "Unit Agreement"), and was entered into by the United States and Premco Western Inc. ("Plaintiff"). [Administrative Record (AR) # 66.]

---

[1] Under Rule 25(d) of the Federal Rules of Civil Procedure, Dirk Kempthorne, as the new Secretary of the Interior, is automatically substituted for Gale A. Norton.

1   On December 20, 2001, the Unit Agreement was approved by the United States
2   Department of the Interior, Bureau of Land Management, Arizona State Office (the "BLM").
3   [AR # 66.] Section 9 of the Unit Agreement contained a public interest clause requiring
4   Plaintiff to diligently drill the initial unit obligation well. [*Id*., p. 321.] Specifically, Section
5   9 required that Plaintiff:

> commence to drill an adequate test well . . . and thereafter continue such drilling diligently until the 700 feet below the top of the redwall formation has been tested or until at a lesser depth unitized substances shall be discovered which can be produced in paying quantities . . . provided, however, that Unit Operator shall not in any event be required to drill said well to a depth in excess of 5,000 feet.

10  [*Id*.] This requirement was to be satisfied within six months of the December 20, 2001,
11  effective date of the Unit Agreement. [*Id*.] Also, the BLM's approval of the Unit Agreement
12  made clear that the "approval shall be void *ab initio*, if the public interest requirement under
13  Sec. 3183.4(b) . . . is not met." [*Id*., p. 315.] Similar to Section 9 of the Unit Agreement, 43
14  C.F.R. § 3183.4(b) provides, in part, that "[t]he public interest requirement of an approved
15  unit agreement for unproven areas shall be satisfied only if the unit operator commences
16  actual drilling operations and thereafter diligently prosecutes such operations in accordance
17  with the terms of said agreement."

18  Drilling operations began in July 2000, prior to the approval of the Unit Agreement.
19  [AR # 39.] When the Unit Agreement was approved, the well was approximately 3,200 feet
20  deep. [AR # 77, p. 368.] Between December 2001 and June 2003, the administrative record
21  shows that BLM's Arizona Strip Field Office (the "Arizona Field Office") conducted
22  numerous periodic drilling inspections of Plaintiff's drilling operations. [AR ## 55, 75, 77,
23  82, 83, 90, 91, 97, 99, 101, 104, 110, 116, 124, 127, 135, 146, 147, 151, 158, 161, and 163.]
24  The inspection summary indicates several periods of extended non-operation during the
25  December 2001 to June 2003 time period. *See* Attachment B, Defendant Dirk Kempthorne's
26  Cross-Motion for Summary Judgement.

27  On October 21, 2002, the Arizona Field Office sent a letter to Plaintiff concerning the

28

- 2 -

1  recent inspections of the unit obligation exploration well showing an extended period of non-
2  operation. [AR ## 112, 113.] The letter detailed the actions necessary to meet the diligent
3  drilling requirements under the Unit Agreement and 43 C.F.R. § 3183.4(b):

> The Bureau of Land Management has determined that in order for Premco Western Inc. to meet the public interest requirement of the cited regulations, Premco Western Inc. is required to resume drilling within 30 days of receipt of this letter, complete the exploratory well to the target depth of 6000 feet as approved in the APD regarding this well or a hydrocarbon producible horizon, and must be conducting drilling operations and have an employee capable of operating the approved drilling equipment on site for at least 8 hours in every 24 hour day, seven days a week, for the duration of the time that it takes to complete this well. Thanksgiving Day, November 28, 2002, Christmas Day, December 25, 2002, and New Year's Day, January 1, 2003, are exempt from the requirement for having an employee capable of operating the drilling equipment on site for 8 hours out of a 24 hour day.

[AR ## 112, 113] The letter further warned that the "[f]ailure to comply with the requirements of this Order, without prior written approval from the Arizona Strip Field Office Manager, will result in the termination of the Dutchman Unit. Leases in the unit, which terms were extended by the unit obligation well, will be terminated *ab initio*." [*Id.*]

Between October 2002 and June 2003, Plaintiff alleges it experienced financial and operational difficulties that prevented compliance with the diligent drilling requirements. For example, in December 2002, when Plaintiff was preparing to commence drilling, Plaintiff's water truck was stolen. [AR # 166, pp. 663-64.] After the truck was recovered, it was discovered that the engine was ruined. [*Id.*, p. 664.] On December 28 and 29, 2002, after Plaintiff was able to rent two water trucks, Plaintiff drilled 54 feet and 142 feet, respectively, to a total depth of 3,617 feet.[2] [*Id.*] On December 30, 2002, it was discovered that the pipe was stuck. [*Id.*] Plaintiff spent January and February 2003 attempting to remove the stuck pipe from the well, ultimately removing the pipe in late February. [*Id.*] Plaintiff also spent

---

[2]December 29, 2002, was the last day drilling occurred before the termination of the Unit Agreement on June 13, 2003.

1  March 2003 remedying a fracture zone at 2,900 feet that prevented access the bottom of the
2  well. [AR # 154.] As for fund raising, Plaintiff spent January and February 2003 attempting
3  to raise additional funds to finance drilling operations and continued such efforts until May
4  2003. [*Id*.] Despite the financial and operational difficulties, in early June 2003, Plaintiff
5  informed the BLM that it anticipated being able to resume drilling on June 9th or 10th. [AR
6  # 162.] However, Plaintiff did not commence drilling on either of those dates.

7  On June 13, 2003, the Arizona State Office Renewable and Mineral Resources Group
8  Administrator (the "ASO Group Administrator") sent a letter to Plaintiff advising it of the
9  automatic termination of the Unit Agreement, pursuant Section 9 of the Unit Agreement and
10 43 C.F.R. § 3183.4(b). [AR # 164.] The letter referenced the diligent drilling requirements
11 set forth in the October 21, 2002, letter, and further advised that "[i]nspection and
12 conversation records submitted by the Arizona Strip Field Office indicate that Premco
13 Western did not meet the requirement that 'it have an employee capable of operating the
14 approved drilling equipment on site for at least eight hours in every 24 hour day, seven days
15 a week, for the duration of the time that it takes to complete the well.'" [*Id*.]

16 Plaintiff appealed the ASO Group Administrator's decision to the BLM's Arizona
17 State Director. Plaintiff's argument on appeal was that "many operational and financial
18 difficulties" caused the failure to comply with the diligent drilling requirement of the Unit
19 Agreement. [AR # 180.] Despite Plaintiff's arguments, the State Director found that "[n]o
20 information was supplied indicating that Premco Western had met the requirements of the
21 October 21, 2002, letter regarding diligent drilling." [*Id*.] Further, the State Director found
22 "no indications that Premco Western ever requested or received written approval from the
23 Arizona Strip Field Manager to deviate from the diligent drilling requirements." Upholding
24 the ASO Group Administrator's decision, the State Director stated:

> The Bureau of Land Management is required to uphold the
> public interest when it manages the public resources of the
> citizens of the United States. The regulations regarding oil and
> gas development on federal leases require a unit to be diligently
> explored. The inspection record indicates that Premco Western

- 4 -

>   has failed to meet the diligent drilling requirements of the public interest requirements of Section 9 of the unit agreement.

[*Id.*]

Thereafter, Plaintiff appealed the State Director's decision to the Interior Board of Land Appeals (the "IBLA"). On May 5, 2005, the IBLA issued a 14-page opinion affirming the State Director's decision. [AR # 206.] In its opinion, the IBLA stated, in part:

>   Premco Western's reasons for appealing the [State Director Review] detail the financial and technical reasons why diligent development has not occurred. Premco Western does not, however, dispute that there were numerous periods of non-operation as contended by the BLM.
>
>   \* \* \*
>
>   The long periods of non-operation, coupled with such little progress toward achieving the target depth, or alternatively, in establishing production in paying quantities at a shallower depth, is not consistent with the prosecution of diligent drilling, and does not satisfy the public interest requirement. BLM properly noted that "since the approval of the unit agreement more than a year ago, the depth of the Dutchman 18-1c well drill hole had advanced from 3,230 ft. (Sundry Notice dated 2/6/2002) to 3,394 ft. (Sundry Notice dated 12/10/02) a total of 164 ft." Between the time of the Sundry Notice dated December 10, 2002, and BLM's decision terminating the unit, depth of the well advanced only another 306 feet (3,394 to 3,617 feet (approximately 3,700 feet)), notwithstanding Premco Western's repeated claim that drilling operations would resume. The reasonableness of BLM's action herein is founded on the fact that BLM issued its decision terminating the unit only after Premco Western failed to resume drilling operations as promised on June 9 or 10, this date having been previously extended by [the President of Premco Western] as he attempted to finance continued drilling operations on behalf of Premco Western. The foregoing, coupled with Premco Western's lack of diligence in submitting to BLM relevant logging data and expert geological reports establishing that commercial production at a lesser depth had been achieved, even as late as urged by Premco Western in its Reply, simply cannot be squared with Premco Western's obligation under Section 9 of the unit agreement.

[*Id.*, pp. 1203-04.] The IBLA, addressing Plaintiff's financial problems, stated:

>   The principal difficulty which cannot be addressed through a suspension of operations or repeated extensions of time, which appears to have consistently plagued Premco Western's operations, is the persistent lack of adequate funding to support drilling operations. Virtually every time any progress was made

> on the drilling front, rather than continuing to prosecute the drilling operations, Premco Western was compelled to launch yet another campaign to fund the next step in drilling. A lack of finances cannot excuse appellant's failure to prosecute diligent drilling under the terms of the unit agreement.

[*Id.*, p. 1205.] Finally, the IBLA did recognize that operational or technical problems can operate as a defense to a lack of diligent drilling, but found against Plaintiff on this issue because Plaintiff failed to seek appropriate relief:

> This is not to say that the Department does not recognize that drilling in a wildcat area has its attendant risks and technical challenges. Unanticipated technical challenges can be addressed by BLM through the grant of a request for extension, as quoted above from the unit agreement, or a suspension of operations, if necessary to resolve technical issues. Premco Western sought neither.

[*Id.*, n. 4.]

## II.  Standard of Review

"For purposes of judicial review of decisions originally made by the BLM, the IBLA is the final decision maker for the Department of the Interior so it is the IBLA decision that is subject to review by the Court." *Coronado Oil Company v. United States Department of the Interior*, 415 F.Supp.2d 1339, 1346 (D.Wyo. 2006) (citing *IMC Kalium Carlsbad, Inc. v. Interior Bd. of Land Appeals*, 206 F.3d 1003, 1009-10 (10th Cir. 2000). "In reviewing decisions of the IBLA, this court exercises a limited standard of review." *Baker v. United States*, 613 F.2d 224, 226 (9th Cir. 1980) (citations omitted). The standard of review is limited to an examination of whether the IBLA decision was arbitrary or capricious, unsupported by substantial evidence, or not in accordance with the law. *Id.* (citations omitted). As explained by *Coronado Oil*, the arbitrary or capricious requirement subsumes and includes the substantial evidence requirement:

> Although the substantial evidence requirement for IBLA decisions is expressed as if it were independent from the arbitrary or capricious standard, it is not: an agency action that is not supported by substantial evidence is also not supported by facts in the record, which means it is arbitrary and capricious.

*Coronado Oil*, 415 F.Supp.2d at 1346 (citing *Olenhouse v. Commodity Credit Corp.*, 42 F.3d

1560, 1574-75 (10th Cir. 1994). Thus, "an IBLA decision must be affirmed if it is not arbitrary or capricious and is otherwise in accordance with law." *Id*.

The decision of the IBLA "is not arbitrary or capricious if it has a reasoned basis and is supported by facts in the record." *Id*. The IBLA decision "has a reasoned basis if the agency considered all relevant factors and there has been no clear error of judgment." *Id*. The IBLA decision "is supported by the facts in the record where there is substantial evidence to support the decision. *Id*. A decision is supported by substantial evidence if the evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## III.  Discussion

In its opinion affirming the decision to terminate the Unit Agreement, the IBLA determined that "[t]he long periods of non-operation, coupled with such little progress toward achieving the target depth, or alternatively, in establishing production in paying quantities at a shallower depth, is not consistent with the prosecution of diligent drilling, and does not satisfy the public interest requirement."  [AR # 206, p. 1203.]  In its appeal to this Court, Plaintiff argues that the reports showing extended periods of non-operation are unrealistic in their conclusions about the lack of diligent drilling and concludes that the IBLA decision:

> is oblivious to the realities of the sort of fund raising that is necessary for entrepreneurial oil and gas exploration; is mindlessly punitive toward an operator who has actually done a great favor to his country by discovering oil in a place where it had been thought not to exist; and ignores a very adequate level of diligence that Premco exercised during the months just prior to termination. For those reasons it is submitted that the decision is arbitrary, capricious, and an abuse of discretion; that it is contrary to the express statutory and regulatory goals that the government was obliged to promote; and is unsupported by substantial evidence and unwarranted by the facts.

First, Plaintiff's claim that the IBLA's decision improperly ignored the financial realities of entrepreneurial oil and gas exploration is without merit. Under controlling law, "insufficient funds will not excuse a lessee's failure to timely perform drilling operations."

- 7 -

1  *Ruby Drilling Co.*, 119 IBLA 210, 214 (1991); *Champlin Petroleum Co. v. Mingo Oil Producers*, 628 F.Supp. 557 (D.Wyo. 1986).  Therefore, the IBLA was not required to consider Plaintiff's difficulties in raising funds when affirming the decision to terminate the Unit Agreement.

Second, Plaintiff's claim that the IBLA's decision was "mindlessly punitive toward an operator who has actually done a great favor to his country by discovering oil in a place where it had been thought not to exist" is unsupported by the record.  While the record indicates Plaintiff drilled through oil for approximately 20 minutes and 20 feet on December 29, 2002, there is no evidence that Plaintiff discovered oil which could be produced in paying quantities or that Plaintiff completed the well to a hydrocarbon producible horizon, as required under the diligent drilling requirements.  [AR # 166, p. 664.]  Further, on April 8, 2003, Plaintiff provided logs and reports to the Arizona Strip Field Office showing only that the well had the potential to produce gas or oil on a commercial basis.  [AR # 157.]  Thus, in light of the ample opportunity provided to Plaintiff to diligently drill the well, and Plaintiff's failure to do so, the IBLA's decision cannot be found "mindlessly punitive."

Finally, Plaintiff's claim that the IBLA's decision "ignores a very adequate level of diligence that Premco exercised during the months just prior to termination" also is unsupported by the record.  As discussed above, Section 9 of the Unit Agreement required Plaintiff to drill the initial unit obligation well until the 700 feet below the top of the redwall formation had been tested or until at a lesser depth if unitized substances were discovered which could be produced in paying quantities.  [AR # 66, p. 321.]  Plaintiff also was required to comply with the public interest requirement in 43 C.F.R. § 3183.4(b), which provides, in part, that "[t]he public interest requirement of an approved unit agreement for unproven areas shall be satisfied only if the unit operator commences actual drilling operations and thereafter diligently prosecutes such operations in accordance with the terms of said agreement."  The diligent drilling requirements were to be satisfied within six months of the December 20, 2001, effective date of the Unit Agreement.  [*Id.*]

- 8 -

On October 21, 2002, after extended periods of non-operation, the Arizona Field Office sent a letter to Plaintiff detailing the actions necessary to meet the diligent drilling requirements. [AR ## 112, 113.] Among other things, Plaintiff was required to resume drilling within 30 days of receipt of the letter and to complete the well to the target depth of 6,000 feet or to a hydrocarbon producible horizon. [*Id.*] Despite the October 21, 2002, letter, and the diligent drilling requirements, Plaintiff only drilled the well to a total depth of 3,617 feet, which depth was reached on December 29, 2002, and did not otherwise complete the well to a hydrocarbon producible horizon. At the time the Unit Agreement was terminated, Plaintiff had not conducted any drilling in approximately five months. Thus, the record supports the IBLA's finding that Plaintiff's actions were not consistent with the prosecution of diligent drilling and the corresponding public interest requirement.[3]

In conclusion, contrary to Plaintiff's arguments and upon review of the entire administrative record, the Court finds that the IBLA's opinion affirming the termination of the Unit Agreement is supported by substantial evidence in the record, is not arbitrary or capricious and otherwise is in accordance with law.

///
///
///
///
///
///
///

---

[3]While Plaintiff complains that operational problems rendered compliance more difficult, the Court acknowledges that "technical challenges can be addressed by BLM through the grant of a request for extension . . . or a suspension of operations, if necessary to resolve technical issues." [AR # 206, n. 4.] However, the Court agrees with the IBLA in finding that Plaintiff sought no such relief and cannot now be heard to complain.

Accordingly,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is DENIED (Doc. # 29);

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment (Doc. # 39) is GRANTED and the Clerk of Court shall enter judgment accordingly.

DATED this 27th day of March, 2007.

_____
James A. Teilborg
United States District Judge

- 10 -